IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL LEAL
d/b/a GE WIRELESS,

      Plaintiff,

vs.                                                  Civ. No. 23-1121 LF/SCY

OHIO SECURITY INSURANCE
COMPANY,

      Defendant.

## ORDER REGARDING MOTION FOR PROTECTIVE ORDER AND MOTION TO COMPEL

This case arises from Plaintiff's claim for property damage insurance coverage following break-ins and thefts at his business between 2021 and 2022. Plaintiff made insurance claims following the break-ins, many of which the insurance provider denied. The operative amended complaint brings four counts: (1) breach of covenant of good faith and fair dealing; (2) violation of the Unfair Insurance Practices Act; (3) violation of the Unfair Practices Act; and (4) intentional infliction of emotional distress.[1] Doc. 1-1. Presently before the Court is Defendant Ohio Security Insurance Company's Motion for Protective Order as to certain requests in Plaintiff's first set of written discovery. Doc. 30. Plaintiff filed a response to the motion for protective order, Doc. 32, as well as a Motion to Compel, Doc. 33. Other than changing the title and the introductory sentence, Plaintiff's response and his motion are the exact same documents. *Compare* Doc. 32, *with* Doc. 33. Having reviewed both motions, the Court grants in part and denies in part the motion for protective order and denies without prejudice the motion to compel.

---

[1] The Court, however, has dismissed from the complaint count 4 for intentional infliction of emotional distress. Doc. 39.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[2] Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation marks and citation omitted). On the other hand, Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: forbidding the disclosure or discovery; specifying terms . . . for the disclosure or discovery; [or] forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (B), (D).

## DISCUSSION

Because the motion for protective order and motion to compel address the same set of discovery (Plaintiff's first set of discovery requests to Defendant Ohio Security) and therefore involve overlapping issues, the Court will address them together, grouping related issues.

---

[2] In his briefing, Plaintiff cites the New Mexico Rules of Civil Procedure and New Mexico state court cases as to the scope of discovery. Doc. 32 at 4. Those rules, however, are not applicable to this case. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts.").

1. **Number of Discovery Requests**

Defendant argues in its motion for protective order and in response to the motion to compel that Plaintiff's discovery requests exceed the number allowed by the Court's order. Doc. 30 at 3, Doc. 38 at 5; *see also* Doc. 16 at 1 (scheduling order, allowing a maximum of 25 interrogatories, 25 requests for production, and 25 requests for admission by each party to any other party); Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Defendant asserts that Plaintiff "requests grossly exceed the number of requests allowed" because "[t]he majority of [] both the interrogatories and requests for production contain multiple subparts that each constitute a discrete interrogatory and/or request." Doc. 30 at 3. "[A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question while an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation." *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 637 (D. Kan. 2012) (internal quotation marks and citation omitted).

On their face, the discovery questions do not exceed the allowable number as Plaintiff issued 25 interrogatories and 25 requests for production. Doc. 36-2. Further, it is not obvious upon reviewing the interrogatories and requests for production that the requests contain numerous subparts on different subjects. Doc. 30-1. In its motion, Defendant provide no specifics, such as pointing to questions it believes include discrete subparts, to show the Court that Plaintiff did, indeed, exceed allowed limits. In it reply, Defendant points to only one question, Interrogatory No. 12. Doc. 36 at 4; *see also* Doc. 38 at 6 (response to motion to compel, arguing that "[t]he majority of [] both the interrogatories and requests for production

contain multiple subparts that each constitute a discrete interrogatory and/or request" but only discussing Interrogatory No. 12). The Court does not agree that this interrogatory includes discrete subparts as it seeks the related information of identifying specific lawsuits and providing details of those lawsuits such as date filed, court filed in, case number, a brief summary of the facts, names of attorneys involved, and outcome of the case. Doc. 36-2 at 9.

The Court, therefore, denies Defendant's request for a Court order that Plaintiff withdraw his discovery requests and propound requests within the number allowed by the Court.

2. **Punitive Damages (Interrogatory Nos. 8 & 16, Request for Production Nos. 9 & 11)**

Defendant moves for a protective order on requests that seek financial information: Interrogatory No. 8 (seeking Defendant's and Liberty/Liberty Fire's financial net worth and production of annual financial statements & tax returns for the last 10 years); Interrogatory No. 16 (seeking the names and information of the accountant or financial officer that is aware of Defendant's and Liberty/Liberty Fire's net and gross value); Request for Production No. 9 (seeking documentation that indicates Defendant's and Liberty/Liberty Fire's gross and net value); and Request for Production No. 11 (seeking Defendant's and Liberty/Liberty Fires' tax returns for the past 10 years). Doc. 36-2. Defendant assumes that Plaintiff seeks this information to inform his claim for punitive damages, and argues that "Plaintiff should not have access to Ohio Security's private financial information unless and until Plaintiff can provide evidence of a prima facie case of Ohio Security's liability for punitive damages, or at the very least until discovery has progressed further and it becomes apparent that there is some evidence to support such an allegation." Doc. 30 at 10. In his response to the motion for protective order and his cross motion to compel, Plaintiff confirms that he seeks the financial information to set a

4

foundation for his punitive damages claim and argues that such discovery is not premature. Doc. 32 at 8, 11; Doc. 33 at 8, 11.

"[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages." *Montes v. Pinnacle Propane, L.L.C.*, No. 16-CV-0126 JCH/SMV, 2016 WL 10179315, at *2 (D.N.M. Sept. 20, 2016) (citing *Roberts v. Shawnee Mission Ford, Inc.*, No. 01-2113-CM, 2002 WL 1162438, at *4 (D. Kan. Feb. 7, 2002)); *see also Ramsey v. Culpepper*, 738 F.2d 1092, 1099 (10th Cir. 1984) (holding that "evidence of a party's financial condition . . . is admissible for the purpose of fixing the amount of punitive damages"). Before obtaining such financial information, the requesting party "generally must show the claim for punitive damages is not spurious." *Montes*, 2016 WL 10179315, at *2 (citation omitted). "A claim is not spurious if 'sufficient facts have been alleged to make a claim for punitive damages.'" *Id.* (quoting *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 34 (D. Kan. 1996)); *see also Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-CV-2494-DDC-TJJ, 2017 WL 3229071, at *3 (D. Kan. July 31, 2017) ("In determining whether Plaintiffs' punitive damages claim is spurious, the Court looks to whether Plaintiff has made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law.").

The Court finds that, at this point, Plaintiff's claim for punitive damages is spurious. Under New Mexico law, to be liable for punitive damages, "the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11, 14. In his complaint, Plaintiff alleges that Defendant Ohio Security issued him a business insurance policy which covered five businesses. Doc. 1-1 at

5

2 ¶ 7. Plaintiff's businesses were broken into, causing damage to both the building he was leasing for the businesses and to his business personal property. *Id.* ¶ 8. Plaintiff submitted an insurance claim regarding one location and Defendant accepted coverage for the damaged business personal property, but denied coverage for damage to the building because it alleged Plaintiff's landlord was responsible for damage to the building. *Id.* at 2-3 ¶ 9. Plaintiff also submitted claims for the other businesses that were broken into and, after an investigation, Defendant denied coverage for both the personal property and building damage. *Id.* at 3-4 ¶¶ 10-12. Under these facts, Plaintiff's claims appear to be run-of-the-mill insurance disputes, without actions that rise to the level of willful, wanton, malicious, reckless, oppressive, or fraudulent. In the present briefing, Plaintiff allege that his punitive damages claim is not spurious because he

> [w]ill present evidence that Liberty Mutual Insurance Company's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith. In addition, that a punitive damages claim can be established against Ohio based on the fact that it was the employer of Liberty, and that it authorized, participated in, or ratified Liberty's conduct.

Doc. 32 at 11. But again, nothing in these allegations is sufficient to support a claim for punitive damages.

Further, even if Plaintiff's claim for punitive damages is not spurious, his requests for financial information are overly broad. He seeks financial information in a variety of forms (annual financial statements, tax returns, and names of financial officers) for the last 10 years. In his response brief he indicates that he is "willing to stipulate to accept the net worth of defendant Ohio verified by its financial officer or certified accountant along with its tax returns for 2019-2024." Doc. 32 at 12. However, "when punitive damages are at issue, courts have routinely held that discovery of the defendant's wealth should be limited to the current year's balance sheet." *Sanders v. Turn Key Health Clinics*, No. 17-CV-492-JED-CDL, 2021 WL 2413040, at *3 (N.D.

6

Okla. June 14, 2021); *see also Montes*, 2016 WL 10179315, at *4 (requiring only that the defendant produce a sworn statement of its net worth, instead of tax returns and bank statements).

Accordingly, the Court grants the motion for protective order as to Interrogatory Nos. 8 and 16 and Request for Production Nos. 9 and 11. If plaintiff gathers more information during discovery to support his claim for punitive damages, he may file a motion to compel the financial information.

### 3. Discovery From Non-Parties Liberty/Liberty Fire

Almost all of the questions in Plaintiff's first set of discovery to Defendant Ohio Security seek information from Defendant as well as from "Liberty/Liberty Fire." *See* Doc. 36-2. In response to such questions, Defendant lodged this objection:

> Ohio Security is the underwriting entity that issued the subject policies to Plaintiff and is the only proper Defendant. Ohio Security fully incorporates all of its arguments contained in its Response to Plaintiff's Motion to Amend the Complaint. Ohio Security objects to this interrogatory because it seeks discovery from a non-party to this case. Neither Liberty nor Liberty Fire are Defendants in this matter. Plaintiff's Motion to Amend the Complaint remains pending at the time of this answer. As such, nonparties are under no obligation to respond to discovery requests.

Doc. 36-2. In the present motion, Defendant seeks a protective order as to all discovery requests directed to Liberty and/or Liberty Fire, arguing that "[s]erving discovery requests on these non-parties is improper." Doc. 30 at 13. In Plaintiff's response and his cross motion to compel, he argues that he needs information from Liberty/Liberty Fire "to paint the entire truthful picture for the jury describing the relationship between Ohio and Liberty." Doc. 32 at 8, Doc. 33 at 8.

As background, Plaintiff filed his original complaint in state court on September 8, 2023, naming Liberty Mutual Fire Insurance Company as the only defendant and the company that issued him a business insurance policy. Doc. 1-1 at 10-18. Defense counsel, however, provided

7

Plaintiff's counsel with a declaration page, indicating that Ohio Security Insurance Company is the underwriter for the policy at issue. Doc. 1-2. Thereafter, Plaintiff amended his complaint to name Ohio Security Insurance Company as the only defendant and the company that issued his business insurance policy. Doc. 1-1 at 1-9.

After Defendant Ohio Security removed the case to federal court, Doc. 1, the Court entered a scheduling order and the parties began conducting discovery. Doc. 16. In the Joint Status Report prepared in anticipation of the scheduling order, Plaintiff stated that he believes "Defendant Ohio Security Insurance Company and Liberty Mutual Insurance Company are both responsible for the property damage claim under Plaintiff's Insurance Policy and for the extra-contractual damages based on how Liberty Mutual Insurance Company handled Plaintiff's claim for and on behalf of Ohio Security Insurance Company." Doc. 14 at 2-3. As such, Plaintiff requested discovery as to Liberty Mutual in anticipation of amending the complaint to add Liberty Mutual, and its employees, as defendants. *Id.* at 2. At the scheduling conference, the Court indicated that Plaintiff is welcome to use some of his written discovery to gather more information about Liberty Mutual before moving to amend, if he chooses. Doc. 18 at 1.

Shortly thereafter, on February 2, 2024, Plaintiff moved to amend his complaint to add Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company as defendants (in addition to Ohio Security). Doc. 20. Defendant Ohio Security opposed the motion, again asserting that "neither Liberty Mutual Insurance Company nor Liberty Mutual Fire Insurance Company insured Plaintiff, issued the subject insurance policy," nor "control[led] the claim process in this case." Doc. 21 at 2. After the parties finished briefing the motion to amend, Plaintiff filed a motion to withdraw the motion to amend, stating only that "discovery in the above case indicates that the proper party is Ohio Security Insurance Company, and that it was

8

acting by its agent Liberty Mutual Insurance Company." Doc. 31 at 1. The Court granted the motion, withdrawing Plaintiff's motion to amend. Doc. 34. Plaintiff has filed no further motion to amend to add Liberty Mutual to the case.

In his present briefing, Plaintiff argues that he "is entitled to all the discovery requested to determine what relationship the defendant had with Liberty." Doc. 32 at 16. That is, he seems to have a question about whether Liberty was an agent of Defendant Ohio Security or an independent contractor, and he argues that he needs the requested discovery to sort out an answer and then move to amend. *See* Doc. 32 at 3; *id.* at 17 ("The determination of whether Liberty was an employee/agent for defendant are fact-specific inquiries; and to move forward on the claim of vicarious liability the plaintiff must have the discovery requested to amend the complaint and to have evidence to present to the jury."). Indeed, as the Court previously advised the parties, Plaintiff is welcome to use his discovery to gather more information about Liberty Mutual before deciding whether to move to amend.

The Court agrees with Defendant Ohio Security that serving discovery requests on a non-party is improper. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 397–98 (D.N.M. 2018) ("A rule 45 subpoena is the proper and only method to conduct discovery of a nonparty."). Here, however, Plaintiff has not served discovery requests on a non-party but has served discovery requests on Defendant Ohio Security, asking it to provide, in part, information as to Liberty/Liberty Fire. The relevant question, thus, is whether the information Plaintiff seeks from Defendant is in Defendant's possession, custody, or control because "a party may not be compelled to produce papers or things which are not in his possession, custody, or control . . . ." *Norman v. Young*, 422 F.2d 470, 472-73 (10th Cir. 1970) (internal quotation marks omitted). "Courts have universally held that documents are deemed to be within the possession, custody or

9

control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516-17 (D. Kan. 2007) (internal quotation marks omitted). A party may have possession, custody, or control if it has retained any right or ability to influence the person possessing them, if it has the practical ability to obtain the documents from another, or when the records can be obtained easily from a third-party source. *Id.* at 517.

  The fact that Liberty/Liberty Fire is not a party does not mean that Defendant Ohio Security does not have to produce information and documents in its own possession, custody, or control, even if such information concerns a third-party. And, as Plaintiff points out, Defendant "does not deny that it has access to the evidence sought of Liberty." Doc. 32 at 10. Indeed, some of the questions to which Defendant objected to as seeking information from a non-party actually seek information from Defendant as to its own interactions with Liberty/Liberty Fire. *See e.g.*, Doc. 36-2 at 5, 24 (Interrogatory No. 6, asking Defendant to "detail any conversation you had with Liberty/ Liberty Fire regarding this case" and Request for Production No. 22, seeking "all documents which explain the relationship you have with Liberty/Liberty Fire regarding the sale and maintenance of your policies . . ."); *see also* Interrogatory Nos. 3, 23; Request for Production Nos. 13, 16, 18, 23-25; Request for Admission Nos. 1-11, 13-16 (seeking discovery from Defendant Ohio Security about its interactions with Liberty/Liberty Fire). If, on the other hand, Defendant Ohio Security does not have possession, custody, or control of information and documents sought regarding Liberty/Liberty Fire, Defendant should say so in its responses.

  The Court therefore denies the motion for protective order as to discovery requests about Liberty/Liberty Fire. Defendant Ohio Security may not object to discovery requests simply because Liberty/Liberty Fire is a non-party and those objections are overruled. Whether

Defendant Ohio Security's other objections to these discovery requests (such as irrelevance, overly broad) are proper is discussed in the section below.

### 4. Remaining Discovery Objections

In its motion, Defendant also seeks a protective order as to Plaintiff's Interrogatory Nos. 5, 11-13, and 25; and Request for Production Nos. 3-4, 12, 14, 17-18, 21, and 22-25. In his cross motion to compel, Plaintiff seeks to compel responses to Interrogatory Nos. 2-7, 11-13, 15, 17-18, and 21-25; Request for Production Nos. 3-4, 12, 14, 18, and 21-25; and Request for Admission Nos. 1-3, 5-11, and 13-16. It is difficult and burdensome for the Court to parse out arguments as to these remaining issues for several reasons. First, because of structure of the briefing, many of the same discovery requests are argued over two different motions and six different documents, with each motion carrying a different burden of proof. *See Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1119 (D.N.M. 2019) ("It is the party seeking the protective order who has the burden to show good cause for a protective order."); *City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 5207098, at *7 (D.N.M. Nov. 9, 2021) ("The party moving to compel discovery has the burden of proving the opposing party's answers [are] incomplete.") (citing *Daiflon Inc. v. Allied Chemical Corp.,* 534 F.2d 221, 227 (10th Cir. 1976)). That is, Defendant responded to the discovery requests with its answers and objections, and instead of waiting for Plaintiff to move to compel a further response to any objections he disagreed with, Defendant filed a preemptive motion for protective order, for which it carries the burden of proof, asking that its objections be sustained. Plaintiff filed a response to Defendant's motion (a motion for which he does not have the burden) that is the exact same document as a subsequently filed motion to compel (a motion for which Plaintiff

does carry the burden). Thus, many of the same discovery requests are discussed across two motions with competing burdens of proof.

However, these cross-motions are also not purely redundant. That is, had Plaintiff's motion to compel (the second-filed motion) simply addressed the same issues as the motion for protective order, the Court could deny it as redundant and address the issues raised in the motion for protective order. *See Sanchez v. Matta*, 229 F.R.D. 649, 656–57 (D.N.M. 2004) ("There is no need to file a motion to compel the same discovery that is the subject of a motion for protective order."). However, Plaintiff's motion raises issues that Defendant's motion did not raise, such as the adequacy of Defendant's responses to Requests for Admission.

This issue of cross-burdens of proof makes the briefs particularly difficult to parse because, on the remaining discovery issues, both sides make conclusory arguments without discussing the specific discovery at issue. For example, while Defendant offers some general legal standards regarding relevance and the scope of discovery (Doc. 30 at 4-6), the entirety of its argument to support its request for a protective order on certain discovery is:

> The information sought by the Plaintiff in terms of claims file[s] in this case, claim handling guidelines, training materials, producing copies of settlements in other cases, claims manuals, and guidelines for processing claims are irrelevant to the issues in his case, and are overly broad, unduly burdensome, unreasonably cumulative, disproportionate to the needs of the case, and vague. *See* Ex. A, Rog. Nos. 5, 11-13, 25; RFP Nos. 3-4, 12, 14, 17-18, 22-25. None of these materials as requested by Plaintiff relate to the issues in this case *i.e.,* 1) whether Plaintiff's claims were covered, and 2) the value of his claimed damages.

Doc. 30 at 6; *see also id.* at 5 ("Plaintiff's requests regarding prior lawsuits, depositions, and settlements involving Ohio Security, Ohio Security's net worth and tax returns, and Ohio Security's claims manual and training guidelines are irrelevant to the case at hand, exceedingly overbroad in both time and scope and are unduly burdensome, and not proportional to the needs of the case."). Relatedly, although Defendant lists a series of general legal standards regarding

12

trade secrets (Doc. 30 at 6-10), the only legal analysis it offers to support a protective order based on trade secrets is contained in two sentences that do not even identify the discovery requests at issue: "Ohio Security's 'claims manual' and 'training materials' contain information that Ohio Security has deliberately take steps to set up to promote efficiency and productivity. If there processes are disclosed, Ohio Security may lose competitiveness." Doc. 30 at 8.

Plaintiff's motion likewise provides largely conclusory statements. For example, Plaintiff lists Interrogatory Nos. 2-8, 11-13, 15-18, and 21-25, and argues that the information requested "is required of Ohio because it is relevant to show that Ohio is not the entity that sold the policy, investigated the Plaintiff's claims, and denied the claims as it will claim to a jury," Doc. 33 at 8; *see also id.* at 14-16 (listing Interrogatory Nos. 2-7, 11-13, 15, 17-18, and 21-25 as requests that Liberty did not respond to an arguing that "[t]he same information is requested of defendant that is requested of Liberty"); Doc. 40 at 5 (Plaintiff's reply to the motion to compel, arguing, without providing any specific analysis, that "the information requested be Ordered to be produced to the Court, that the Court review the information, and that the Court should decide if plaintiff is entitled to any discovery and under what conditions"). Plaintiff's response and motion also largely focus on obtaining discovery from Liberty/Liberty Fire and, in many instances, does not make arguments about whether Defendant Ohio Security should produce documents or respond to the requests.

Because the unfocused structure of the briefs creates confusion as to what discovery requests remain at issue and precisely what the parties' arguments are as to those requests, the Court denies the remainder of the motion for protective order and denies the motion to compel without prejudice. Now that the Court has clarified the matter of punitive damages and whether Defendant may object to discovery requests simply because Liberty/Liberty fire is a non-party,

13

the parties should confer regarding supplementations and any remaining objections.[3] If they are unable to reach an agreement on outstanding objections, Plaintiff, as the party with the burden to prove the answers to its discovery requests are incomplete, *see Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976), may refile a motion to compel, within 30 days of the date of this Order.

## CONCLUSION

For these reasons, Ohio Security's Motion for Protective Order (Doc. 30) is GRANTED IN PART AND DENIED IN PART as follows:

- Defendant Ohio Security need not respond to Interrogatory Nos. 8 and 16 and Request for Production Nos. 9 and 11 regarding financial information;

- Defendant Ohio Security's objections on the basis that Liberty/Liberty Fire is a non-party are overruled; and

- the motion for protective order is denied as to all other issues.

---

[3] It is unclear if the parties properly conferred before filing the present motions. Defendant asserts in its response to the motion to compel that "after reviewing Ohio Security's objections to the discovery propounded upon it, counsel for both parties participated in a telephone conference in which Plaintiff's counsel confirmed he was not willing to reconsider any of the discovery requests" and instead filed his motion to compel on April 16. Doc. 38 at 4. Defendant excluded from this timeline the fact that it filed its motion for protective order on April 10, in which it indicated that "Plaintiff's opposition is presumed based on prior communications with counsel on these discovery requests." Doc. 30 at 2. Thus, the Court reminds the parties that they must make a "reasonable effort to confer" before filing motions on discovery disputes: "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." Doc. 6 at 2 n.1.

Additionally, Plaintiff's Motion to Compel (Doc. 33) is DENIED WITHOUT PREJUDICE. After conferring with the defense, Plaintiff may refile a motion to compel, within 30 days of the date of this Order, regarding any outstanding issues.[4]

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

---

[4] This deadline is subject to reasonable extensions as approved by the Court.